CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

October 28, 2025
LAURA A. AUSTIN, CLERK
BY:  s/ FELICIA CLARK
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

|  |  |  |
|---|---|---|
| **CRFM, ET AL..,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:24CV00065 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **GLEN DAVID MOORE, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Timothy W. McAfee, MCAFEE LAW FIRM, PLLC, Big Stone Gap, Virginia, for plaintiffs; Mark. A. Kohl, DECARO, DORAN, SICILIANO, GALLAGHER & DEBLASIS, LLP, Bowie, Maryland, for Defendants Olivia Nickels, Marie Pereira, and Bristol Women's Health, PLLC; Johneal M. White and Rachel E. Tucker, GLENN ROBINSON CATHEY SKAFF & WHITE PLC, Roanoke, Virginia, for Defendants Glen David Moore, Jane Doe, John Doe, and the Dickenson County Department of Social Services; and Christopher S. Dadak and John R. Fitzgerald, GUYNN WADDELL, P.C., Salem, Virginia, for Defendant Whitley Poston.*

Using the pseudonym CRFM, the plaintiff alleges that when 14 years old, she was forced to undergo a medicated abortion while she was in the custody of defendant Dickenson County, Virginia, Department of Social Services (DSS). Other defendants include the director and an employee of the DSS, as well as a medical clinic providing abortion services, Bristol Women's Health, PLLC (Women's Health), the director of the medical clinic, and a physician at the clinic. The defendants, in three separate motions, move to dismiss or for summary judgment on

multiple grounds including res judicata and sovereign immunity.  The motions have

been fully briefed and are ripe for decision.[1]

I. BACKGROUND.

The following are the allegations of the Amended Complaint.[2]

On or about January 19, 2023, when CRFM was 14 years old and three months

pregnant, she was removed from her father's custody.  She was placed with a family

friend to live but was in the legal custody of the DSS.  Defendant Glen David Moore

is the director of the DSS.  Co-plaintiffs Mullins and Hagy are the parents of CRFM.

Later that same day, DSS employee and defendant Whitley Poston took

CRFM to Women's Health, an "abortion clinic."  Am. Compl. ¶ 26, Dkt. No. 32.

Poston and CRFM met with defendant Olivia Nickels, the director of the clinic.

CRFM told Nickels that she did not want an abortion, but Nickels spoke with her

about the advantages of having one.  CRFM repeated her opposition and, "[o]n

multiple occasions," left the clinic to avoid an abortion.  *Id.* at ¶ 29.  Poston, the

---

[1] I have dispensed with oral argument because the factual allegations and arguments are adequately presented in the materials before the Court, and a hearing would not significantly aid the decisional process.

[2] CRFM is now 18 years old.  When the Complaint was first filed, she was a minor and the action was filed on her behalf by her parents (her parents also assert claims on their own behalf).  An identical Amended Complaint was thereafter filed in which she asserts the same allegations and claims as an adult.  Am. Compl., Dkt. No. 32.  CRFM still proceeds by pseudonym in light of the nature of the facts.  I will not require the defendants to respond to the Amended Complaint and will consider the responses to the original Compliant as pertaining to the Amended Complaint.

DSS employee, went after her each time and "placed her hands on CRFM to have her return inside to the abortion clinic." *Id.*

Nickels then performed an ultrasound without the girl's permission. Marie Pereira, D.O., who sometimes practiced at Women's Health, was the supervising physician. She ordered the ultrasound and prescribed three abortion pills for CRFM. Nickels handed CRFM the pills, and the girl took the first one. CRFM then left the clinic, and while the Amended Complaint does not indicate if the girl took the remaining two pills, it does state that the fetus was expelled within 48 hours. DSS never informed CRFM's parents or an unnamed guardian ad litem.

The Amended Complaint asserts five counts. Count 1 is a claim for battery against Poston, Nickels, Dr. Pereira, and Women's Health, as well as a claim that DSS, Moore, and Jane and John Doe failed to provide adequate training to Poston that contributed to cause the battery. Count 2 is a claim of ordinary negligence against Poston, Nickels, Dr. Pereira, Women's Health, and John and Jane Doe. Count 3 is a gross negligence claim against Poston, Moore, and John and Jane Doe.[3] Count 4 is a claim against Moore, Jane and John Doe, Nickels, Dr. Pereira, and Women's Health pursuant to 42 U.S.C. § 1983 based upon violation of the right to due process as guaranteed by the Constitution. Count 5 is a § 1983 claim against

---

[3] The Court has supplemental subject-matter jurisdiction of these state law claims because they are part of the same case or controversy as the federal claims. 28 U.S.C. § 1367(a).

DSS based upon *Monell v. Department of Social Services*, 436 U.S. 658 (1978), holding that a governmental entity may be held liable under § 1983 for the acts of its employees because of its policies or customs.[4]

The plaintiffs seek compensatory and punitive damages.

### A. Procedural History.

A similar lawsuit by the plaintiffs was filed in the Circuit Court of Dickenson County, Virginia, in February of 2023. But that court granted a nonsuit (a voluntary dismissal) of DSS Director Moore in June 2023, and it did so again as to the DSS itself in October 2023. At that point, the defendants were Poston, Nickels, Dr. Pereira, and Women's Health.

The plaintiffs brought battery, ordinary negligence, gross negligence, tortious interference, and due process constitutional claims in the state court lawsuit. The only claim that is brought in the present action for the first time is the *Monell* claim against DSS. The state proceeding's battery claim named Poston, Nickels, Dr. Pereira, and Women's Health as defendants, but here it also names DSS, Moore and Jane and John Doe, unidentified employees of DSS. The simple negligence claim in the state case named Nickels, Dr. Pereira, and Women's Health, but here it names them and also Poston, Moore, and Jane and John Doe. The gross negligence claim

---

[4] Count 5 is misnumbered in the Amended Complaint as a duplicate Count 4. Dkt. No. 32 at ¶ 114–22.

named only Poston in the state proceeding, but here it names her and also Moore and Jane and John Doe.  There is not a tortious interference claim in the present federal action.

The plaintiffs' constitutional claims in the state proceeding named Nickels, Dr. Pereira, and Women's Health.  Here, the plaintiffs also name Moore and Jane and John Doe.

On March 18, 2024, the state circuit court entered two orders.  The first order sustained all of the remaining defendants' demurrer to the battery claim and Poston's demurrer to the gross negligence claim.  Med. Defs.' Mot. Dismiss Ex. 4, First Order, Dkt. No. 8-4.  It also granted the plaintiffs leave to file an amended complaint within 10 days.  *Id.*  The second order sustained the defendants' demurrer to the tortious interference claim and dismissed that claim with prejudice.  *Id*. at Ex. 3, Second Order, Dkt. No. 8-5.  "In Virginia the authorities are uniform to the effect that a demurrer goes to the heart of the case and, if sustained, it is a decision on the merits." *Rivers v. Norfolk, Balt. & Carolina Line, Inc.*, 210 F. Supp. 283, 287 (E.D. Va. 1962).  Thus, it has preclusive effect.  *Astrop v. Eckerd Corp.*, No. 3:09CV681, 2010 WL 1779992, at *9 (E.D. Va. Apr. 29, 2010).

The plaintiffs did not file an amended complaint.  In Virginia, an order that sustains a demurrer and grants the plaintiff leave to amend becomes final once the time allowed for amending has expired.  *Norris v. Mitchell*, 495 S.E.2d 809, 811

(Va. 1998). As a result, the orders sustaining the demurrers to the battery and gross negligence claims became final after March 28, 2024.

The plaintiffs requested a nonsuit on July 1, 2024, about three months later. That day, the circuit court entered an order of voluntary nonsuit under Va. Code Ann. § 8.01-380 and dismissed the pending claims without prejudice. Med. Defs.' Mot. Dismiss Ex. 4, Order Voluntary Nonsuit, Dkt. No. 8-6.

### B. Parties' Motions.

Nickels, Dr. Pereira, and Women's Health (the Medical Defendants) move for dismissal under Rule 12(b)(6) of Count 1, for battery, and Count 4, under § 1983 for violations of due process. They also argue that they are entitled to summary judgment under Rule 56(a) on those claims on the ground of res judicata. They contend in the alternative that the Amended Complaint fails to plead the level of intent necessary for battery and that constitutional claims may only be made against state actors. They are named in the ordinary negligence claim in Count 2 but do not move to dismiss it.

DSS Director Moore, Jane and John Doe, and the DSS (the State Defendants) move to dismiss Count 2 for ordinary negligence, Count 3 for gross negligence, Count 4 for violation of due process, and Count 5 for the *Monell* claim. They argue that the claims are barred by sovereign immunity or qualified immunity or fail to state a claim for which relief may be granted.

Separately, DSS employee Poston moves to dismiss all of the counts that name her — Counts 1, 2, and 3 — on the basis of res judicata. In the alternative, she argues that the Amended Complaint fails to allege that she had the requisite intent to commit a battery; that she is immune to the ordinary negligence claim; and that the allegations do not establish gross negligence.

## II. Standards of Review.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In order to survive a motion to dismiss, the plaintiff must state "a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts. *Id*. A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION.

#### A. Res Judicata.

The Medical Defendants argue that the battery claim must be dismissed because of res judicata. I agree.

Res judicata is an affirmative defense. Fed. R. Civ. P. 8(c)(1). It can be decided on a motion to dismiss when its applicability is clear from the face of the complaint. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). The burden of proving res judicata is on the proponent of its applicability. *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 218, 219 (4th Cir. 2006). For the choice of law analysis, "we look to the court where the prior judgment was entered." *Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002 (5th Cir. 2022). Thus, I must examine Virginia preclusion law.

Virginia Supreme Court Rule 1:6(a) states,

A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and

regardless of the legal elements or the evidence upon which any claims
in the prior proceeding depended, or the particular remedies sought.

Res judicata is a "practical doctrine[]" that considers "whether the party has
previously had a fair shot with respect to the claims raised in the present action."
*SAS Inst., Inc. v. World Programming Ltd*, 874 F.3d 370, 378 (4th Cir. 2017) (internal
quotation marks and citation omitted). "As a general proposition, a judgment of
dismissal which expressly provides that it is 'with prejudice' operates as res judicata
and is as conclusive of the rights of the parties as if the suit had been prosecuted to
a final disposition adverse to the plaintiff." *Raley v. Haider*, 747 S.E.2d 812, 815
(Va. 2013) (citation and alterations omitted).

Here, only the tortious interference claim was expressly dismissed with
prejudice. The state court granted the defendants' demurrers to the battery and the
gross negligence claims. While it did not expressly dismiss those claims, its order
sustaining the demurrers gave the plaintiffs 10 days to file an amended complaint.
The plaintiffs did not do so. In considering whether an order sustaining a demurrer
is a final order, the Supreme Court of Virginia has said:

> If the order merely sustains such a demurrer, it is not a final order; to
> be final, it must go further and dismiss the case. However, if the order
> also gives the plaintiff leave to amend, it does not become final until
> after the time limited therein for the plaintiff to amend his bill has
> expired.

*Norris*, 495 S.E.2d at 811 (internal quotation marks and citations omitted).  The

Court of Appeals of Virginia recently confirmed that an order can be final if it gives

the plaintiff leave to amend but does not also dismiss the case:

> When a circuit court sustains a demurrer with leave to amend by a specific time and "an amended pleading is not filed within the specific time provided," the order sustaining that demurrer "is sufficient to dispose of the claim(s) or cause(s) of action subject to the demurrer." This is true "even if the order does not expressly dismiss the claim(s) or cause(s) of action at issue." The order becomes final if no amended pleading is filed within the specified time.

*DiLeonardo v. Fanous*, 911 S.E.2d 852, 856 (Va. Ct. App. 2025) (quoting Va. Sup.

Ct. Rule 1:1(c)).  Here, the plaintiffs declined to file an amended complaint within

the time granted by the order.  The plaintiffs claim that within that 10-day deadline,

they filed a motion to nonsuit the case.[5]  Mem. Opp'n Poston Mot. Dismiss 4, Dkt.

No. 25.  But they do not produce any evidence showing such a motion was filed

within 10 days.  The docket in the state case also does not show that the plaintiffs

filed a motion within 10 days of March 18, 2024.  It only shows a letter apparently

filed by counsel for the defendants, and an answer to the second amended complaint.

Docket, *Mullins, et al. v. Moore, et al.*, CL23000088-00 (Dickenson Cnty. Cir. Ct.

Feb. 17, 2023).

---

[5]  The plaintiffs identify the state court's order as the "March 18, *2014*, Order," which is a typo for March 18, *2024*.  Mem. Opp'n Poston Mot. Dismiss 4, Dkt. No. 25 (emphasis added).

Because the plaintiffs have not shown that an amended complaint was filed within the 10-day deadline, the state court's order sustaining the demurrer became final. Therefore, for res judicata purposes, a final order was entered for the battery, gross negligence, and tortious interference claims.

Also, for res judicata to apply, "there must be an identity of parties between the present suit and the prior litigation asserted as a bar." *Raley*, 747 S.E.2d at 815 (internal quotation marks and citation omitted). The state battery claim named Poston, Nickels, Dr. Pereira, and Bristol Women's Health. The Amended Complaint names all of the same defendants here, although it also alleges that Moore and Jane and John Doe failed to provide training to Poston, which causally contributed to the battery. Count I for battery must be dismissed with prejudice as to the Medical Defendants and Poston.[6] In addition, the failure to provide training allegation as to the battery is insufficient in that it fails to state sufficient facts to make it a plausible claim. That portion of Count 1 will be dismissed without prejudice.

The Medical Defendants also argue that because the state court dismissed the tortious interference with parental rights claim with prejudice, res judicata bars the plaintiffs from bringing Count 4 for due process claims against them. However, the

---

[6] "Dismissal based on res judicata constitutes a judgment on the merits and therefore dismissal with prejudice is proper." *Dockery v. Berryhill*, No. 3:18CV56 (HEH), 2019 WL 2480046, at *5 n.1 (E.D. Va. Jan. 3, 2019), *R. & R. adopted*, 2019 WL 1379933 (E.D. Va. Mar. 27, 2019).

application of res judicata need not be examined because the plaintiffs "do not oppose dismissal of the Medical Defendants from Count IV." Mem. Opp'n Medical Defs.' Mot. Dismiss 3, Dkt. No. 24. As a result, Count 4 against the Medical Defendants will be dismissed.

Poston also contends that res judicata supports her Motion to Dismiss. First, res judicata requires dismissing the gross negligence claim against her. In state court, the gross negligence claim named only Poston. Here, the plaintiffs name Poston, Moore, and Jane and John Doe. Both claims include a list of conduct the plaintiff alleges was grossly negligent, and they are identical except that the claim here adds two examples of conduct: a willful and conscious disregard to provide training and supervision and the failure to provide reasonable training and supervision. For the same reasons as the battery claim, the gross negligence claim, Count 3, against Poston must also be dismissed with prejudice under res judicata.[7]

Second, Poston also argues that the ordinary negligence claim against her should also be dismissed. She was not named in that claim at the state court level, and the state court did not sustain a demurrer or otherwise dispose of the ordinary

---

[7] Moore and the Doe defendants do not argue that they were in privity with Poston such that the gross negligence claim against them should also be dismissed under res judicata. Because res judicata is an affirmative defense that Moore and the Doe defendants do not raise, I will not consider whether they were in privity with the parties in the state case such that res judicata applies to counts naming them.

negligence claim. Poston contends that the plaintiffs' "assertion of gross negligence renders the court's decision on gross negligence applicable" to the ordinary negligence claim. Poston Mem. Supp. Mot. Dismiss 6, Dkt. No. 19. In other words, because the plaintiffs could have named Poston in the ordinary negligence claim but did not, res judicata should also bar the ordinary negligence claim now brought against Poston. The plaintiffs' opposition cites no case law to support their arguments about res judicata, and they do not respond to or acknowledge Poston's argument that res judicata on the gross negligence claim also applies to the ordinary negligence claim.

"'A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, [is] forever barred from prosecuting any . . . subsequent civil action against the same opposing . . . parties on any claim or cause of action that arises from that same conduct, transaction or occurrence.'" *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 894–95 (Va. 2017) (quoting Va. Sup. Ct. Rule 1:6(a)). To decide what constitutes the same conduct, transaction, or occurrence, "[t]he proper approach asks 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* at 897 (quoting Restatement (Second) of Judgments § 24(2)).

Here, the plaintiffs seek to bring an ordinary negligence claim against Poston. But the state court already entered a final order on a gross negligence claim against her. Both claims arise out of the same conduct, since they both address Poston's alleged conduct facilitating CRFM's abortion. Therefore, res judicata precludes the plaintiffs from bringing the ordinary negligence claim against Poston here when the gross negligence claim against her has already been resolved by a final order. Poston's motion to dismiss the ordinary negligence claim in Count 2 against her must be granted with prejudice.

### B. Count 5's *Monell* Claim.

While the State Defendants' motion argues that none of the counts state a valid claim for relief against DSS, the plaintiffs clarify in their opposition that DSS is a defendant only in the *Monell* claim. Mem. Opp'n State Defs.' Mot. Dismiss 6, Dkt. No. 23. Because DSS is immune from suit, however, Count 5 must be dismissed with prejudice.

The Eleventh Amendment bars suits for money damages against a state unless Congress has expressly abrogated that immunity, or the state has consented to suit. U.S. Const. amend. XI; *see, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). The Supreme Court has construed the Eleventh Amendment to also grant immunity to a nonconsenting state in suits brought by the state's own citizens in federal courts. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).

"It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (citation omitted). This includes so called "arm[s] of the [s]tate." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). However, "as distinct from states or arms of the state," local governing bodies, such as municipalities, are considered "persons" under 42 U.S.C. § 1983 and therefore can be sued for monetary, declaratory, or injunctive relief if it is plausibly alleged that the body's policy or custom is responsible for the deprivation of constitutional rights. *Nelson v. Herrick*, No. 3:11-CV-00014, 2011 WL 5075649, at *8 (W.D. Va. Oct. 26, 2011) (citing *Monell*, 436 U.S. at 690.

Thus, the threshold question is whether the DSS is an arm of the Commonwealth of Virginia or a person subject to suit under § 1983. Departments of social services have repeatedly been found to function like arms of the state. *See, e.g.*, *Scott v. Wise Cnty. Dep't of Soc. Servs.*, No. 2:20CV00014, 2020 WL 6081890, at *2 (W.D. Va. Oct. 15, 2020); *Kincaid v. Anderson*, No. 1:14CV00027, 2015 WL 3546066, at *3 (W.D. Va. June 8, 2015). As explained in *Kincaid*, the Commonwealth maintains a high degree of control over local departments of social services in their role of protecting children. *Id.*; *see also Nelson*, 2011 WL 5075649,

at *9–10.  For example, "[s]tate law requires local departments of social services to perform their child welfare services subject to the direction of the State Commissioner of Social Services and in accord with regulations adopted by the State Board of Social Services."  *Doe v. Mullins*, No. 2:10CV00017, 2010 WL 2950385, at *1 (W.D. Va. July 22, 2010) (citing Va. Code Ann. § 63.2–319 (2007)).  Local social services departments are therefore arms of the state when it comes to child welfare services, thus entitling them to sovereign immunity.

### C. The State Defendants' Motion to Dismiss All Counts.

The remaining State Defendants are Moore and Jane and John Doe.  It is unclear which claims the plaintiffs seek to bring against them.  They explicitly name Moore and the Doe defendants in Counts 1, 2, 3, and 4.  Counts 1, 2, and 3 are common law claims for battery, ordinary negligence, and gross negligence.  But in their briefing, the plaintiffs state that "[n]one of the claims against Moore, Jane Doe or John Doe are predicated upon common law, but, instead, upon 42 U.S.C. § 1983." Mem. Opp'n State Defs.' Mot. Dismiss 11, Dkt. No. 23.  Yet they go on to state that "Moore, Jane Doe and John Doe had a duty under Virginia law to protect and prevent harm to CRFM."  *Id.*  They also cite the three forms of negligence recognized in Virginia but state no reason why these defendants are liable for ordinary or gross negligence.  *Id.*  Moreover, to the extent that Counts 1, 2, and 3 in the Amended

Complaint actually name Moore and Jane and John Doe as defendants, those claims cannot be predicated upon § 1983.

i. The Common Law Claims.

In the Amended Complaint, the plaintiffs allege that "[t]he failures of the Dickenson County Department of Social Services, Moore, Jane Doe and John Doe to provide training to Poston also causally contributed to the battery" committed by Poston and the Medical Defendants. Am. Compl. ¶ 85, Dkt. No. 32. To the extent that the plaintiffs still claim Moore and the Doe defendants, in their individual capacities, are liable for battery, that claim must be dismissed. In Virginia, "[t]he tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Koffman ex rel. Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). As the defendants point out, the plaintiffs do not allege that Moore or the Doe defendants made any contact with CRFM, interacted with her, or were present during the events alleged on January 19, 2023. Because the Amended Complaint fails to allege facts sufficient to state a claim for battery against Moore and the Doe defendants, any battery claim must be dismissed without prejudice.

The Amended Complaint further alleges that Moore and the Doe defendants were negligent in their "failure to provide reasonable training and to provide reasonable supervision" of Poston and the Medical Defendants. Am. Compl. ¶ 97, Dkt. No. 1. But Virginia does not recognize a claim for negligent supervision. *A.H.*

*ex rel. C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 475 (Va. 2019).  Again, this claim must be dismissed with prejudice.

The Amended Complaint also alleges that Moore and the Doe defendants were grossly negligent and support that claim with a list of allegedly grossly negligent conduct.  But the list does not identify any specific acts by Moore and the Doe defendants.  The conduct alleged includes:

> (A) intentionally disregarding the Virginia Code requirements for obtaining consent for an abortion of a minor child in their legal custody; (B) intentionally disregarding the DSS Regulations for obtaining consent for an abortion of a minor child in their legal custody; (C) intentionally disregarding Dickenson County DSS internal rules for obtaining consent for an abortion of a minor child in their legal custody; (D) engaging in conduct to persuade CRFM to have an abortion contrary to CRFM's wishes; (E) requiring CRFM to come back inside to the abortion clinic against her own free will; (F) willful and conscious disregard to provide training and supervision; (G) the failure to provide reasonable training and to provide reasonable supervision.

Am. Compl. ¶ 103, Dkt. No. 1.  Only allegations (F) and (G) are tied to facts pled in the Amended Complaint showing the involvement of Moore and the Doe defendants. But, as explained above, Virginia does not recognize a negligent supervision cause of action.  The gross negligence claim against Moore and the Doe defendants, must be dismissed without prejudice.

### ii.  The Due Process Claims.

Count 4 includes constitutional claims against Moore and Jane and John Doe on the ground that they have due process rights guaranteed by the Virginia

Constitution and the United States Constitution, including the Fifth, Ninth, and Fourteenth Amendments which were violated. They further argue that they "rely upon their Due Process Rights as expressly articulated in *Troxel v. Granville*, 530 U.S. 57 (2000)." Mem. Opp'n State Defs.' Mot. Dismiss 13, Dkt. No. 23.

First, as explained above, § 1983 does not permit litigants to enforce state constitutional rights. Second, the Fifth Amendment protects due process rights from violation by the federal government, and the defendants here are state employees. *See Garrett v. Sheeley*, No. 3:19-CV-185, 2023 WL 4844051, at *1 (N.D.W. Va. Feb. 6, 2023) ("As it pertains to the right to due process, the Fifth Amendment's Due Process Clause applies to the federal government."). Third, the Ninth Amendment does not create any specific right, so there is no constitutional claim for a violation of CRFM's parents' rights to be had under it. *See Wohlford v. U.S. Dep't of Agric.*, No. 87-2043, 1988 WL 24281 at *1 (4th Cir. Mar. 17, 1988) (unpublished) ("[T]he ninth amendment creates no constitutional rights."). Therefore, of the amendments cited by the plaintiffs, only the Fourteenth Amendment may provide a cause of action under § 1983.

The plaintiffs cite *Troxel* to argue that CRFM's parents have "protections when the state chooses to make decisions regarding their child." Mem. Opp'n State Defs.' Mot. Dismiss 13, Dkt. No. 23. In *Troxel,* the Supreme Court affirmed the Washington State Supreme Court's decision that a state law permitting anyone at any

time to petition for visitation rights, and for courts to grant those rights whenever visitation was in the best interest of the child, was unconstitutional. A child's paternal grandparents had petitioned for, and won, visitation rights against the wishes of the child's widowed mother. In holding that the law was unconstitutional, the Court stated that the liberty interest of "parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by" the Supreme Court. *Troxel*, 530 U.S. at 65. "[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects" that fundamental right. *Id.* at 66.

But the facts of the case included that the mother, the custodial parent, had never been found by any court and was not alleged by the grandparents to be an unfit parent. For the Court, "[t]hat aspect of the case [was] important." *Id.* at 68. Here, CRFM was removed from her father's custody. The Amended Complaint does not explain why, but neither does it allege that it was wrong to do so. CRFM was not in either of her parents' custody at the time she was taken to Women's Health. Plaintiffs do not cite to cases or a specific law that show they had a protected liberty interest in the medical decisions made for or by a child over whom they did not have custody. For a minor in Virginia to receive an abortion, she must seek consent of an "authorized person," which includes "a parent or duly appointed legal guardian or custodian of the minor." Va. Code Ann. § 16.1-241(W). The plaintiffs argue

elsewhere in their briefing that the relevant statute for consent for medical care for a minor in the custody of DSS is found in Va. Code Ann. § 54.1-2969, but they do not explain which subsection the defendants violated, or how. Mem. Opp'n Poston Mot. Dismiss 8–9, Dkt. No. 25. And that law confers the authority to give consent for a minor separated from the custody of her parent or guardian in need of medical treatment on the principal executive officer of any agency that has custody of the minor and is legally qualified to care for her. Va. Code Ann. § 54.1-2969(A)(5). Since DSS had custody of CRFM, it could legally give consent for her to have the abortion without her parents' permission. Because CRFM's parents did not have legal custody at the time, and because DSS was authorized by statute to provide consent for the abortion, Count 4 as to CRFM's parents must be dismissed without prejudice.

The plaintiffs also argue that CRFM had a right not to have an abortion forced on her. To state a claim under § 1983, plaintiffs must allege that defendants violated "a right secured by the Constitution and the laws of the United States" and that the deprivation of that right "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48–49 (1988). There is a protected liberty interest in refusing unwanted medical treatment. *Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). Taking the allegations in the Amended Complaint as true, the plaintiffs have sufficiently pled that CRFM's right not to have an abortion

was violated.  But they have failed to plead that the violation was committed by someone acting under color of state law as it relates to Moore or the Doe defendants.

Moore and the Doe defendants are not alleged to have been present with CRFM at any time, or at the clinic on January 19, 2023.  They are not alleged to have even known that Poston was taking her to the clinic.  The Amended Complaint does allege that they knew CRFM was 15 years old and 11 weeks along in her pregnancy, but it does not state when they were made aware of that.  As a result, the Amended Complaint fails to plead that Moore or the Doe defendants violated CRFM's right by requiring her to have an abortion without her consent.  Count 4 must be dismissed without prejudice.

### iii.  Poston's Involvement in Due Process Claims.

Although the plaintiffs did not name Poston in Count 4, they argue that the "claims against Poston are not predicated upon common law, but, instead, upon 42 U.S.C. § 1983."  Mem. Opp'n Poston Mot. Dismiss 7, Dkt. No. 25.  Count 4 is the only count that addresses due process claims against individuals.  As a result, the plaintiffs have not brought a claim against Poston for a violation of due process rights.

### V. Conclusion.

For the foregoing reasons, it is **ORDERED** as follows:

1. The Medical Defendants' Motion to Dismiss Counts I & IV and for Summary Judgment, Dkt. No. 8, is GRANTED.  Summary judgment is hereby GRANTED in favor of defendants Olivia Nickels, Maria Pereira, and Bristol Women's Health, PLLC, as to Count 1 (Battery) and Count 4 (Constitutional Claims) on the ground of res judicata. They are also named in Count 2 (Ordinary Negligence) but expressly have not moved to dismiss that claim, which remains;

2. The Motion to Dismiss, Dkt. No. 15, is GRANTED.  Count 5 (*Monell* Claims) is hereby DISMISSED with prejudice as to defendant Dickenson County Department of Social Services on the ground of immunity.  Counts 1, 2, and 3 (Battery, Ordinary Negligence, and Gross Negligence) are hereby DISMISSED without prejudice as to defendants Glen David Moore and John and Jane Doe for failure to state a claim for relief;

3. The Motion to Dismiss, Dkt. No. 18, is GRANTED.  Counts 1, 2, 3, and 4 are hereby DISMISSED with prejudice as to defendant Whitley Poston on the ground of res judicata; and

4. Those claims dismissed without prejudice may be repleaded in a Second Amended Complaint in accord with the rulings herein if filed within 21 days of the date of entry of this Opinion and Order.  The defendants are not required to respond to the Amended Complaint.

ENTER:   October 28, 2025

/s/  JAMES P. JONES
Senior United States District Judge